UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff(s),

vs                                          Case No: 05-80025
                                              Honorable Victoria A. Roberts

D-3 KEVIN WATSON,

    Defendant(s)

_____/

**ORDER**
(REGARDING DOCUMENT #193)

**I.    INTRODUCTION**

This matter is before the Court on Defendant Kevin Watson's Motion to Strike Death Penalty Notice and to Bar Imposition of the Death Penalty Because the Federal Death Penalty Scheme, 18 U.S.C. §3591 *et seq.*, is Unconstitutional under *Ring v. Arizona* with Incorporated Brief (Doc. #193). Defendant Watson ("Watson") requests the Court to declare the Federal Death Penalty Act ("FDPA") unconstitutional, strike the "Special Findings" section from his Second Superseding Indictment, and prohibit the Government from seeking the death penalty.

Watson's motion is **DENIED**. However, one portion of it - his argument on the evidentiary standard at the penalty phase - is **DENIED WITHOUT PREJUDICE.**

**II.    ARGUMENTS AND ANALYSIS**

In *Ring v. Arizona*, 536 U.S. 584 (2002), the United States Supreme Court

1

applied *Apprendi v. New Jersey*, 530 U.S. 466 (2000)[1] to overrule *Walton v. Arizona*, 497 U.S. 639 (1990). The Court in *Walton* held that statutory aggravating factors could be found by a sentencing judge because they were not "essential elements" of an offense. *Walton*, 497 U.S. at 648-49. The Court in *Ring* held that the Sixth Amendment requires statutory aggravating factors to be found by a jury because they operate as the "functional equivalent of an element of a greater offense." *Ring*, 536 U.S. at 609 (quoting *Apprendi*, 530 U.S. at 494 n.19).

### A. Elements of a Criminal Offense

Watson argues that the FDPA is unconstitutional because it does not require intent factors and statutory aggravating factors to be included in the Indictment of a death-eligible crime. Even though his Second Superceding Indictment does reference these factors, Watson argues that because the statute doesn't require it - and *Ring* stands for the proposition that statutory aggravating factors are elements of the offense of capital murder that must be pled and proven - the unconstitutional defect in the statute cannot be remedied merely by Department of Justice practice ("DOJ"). Since *Ring*, DOJ practice is to include eligibility defining factors in the indictment.

---

[1] The Court in *Apprendi* held that "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Apprendi*, 530 U.S. at 489 (quoting *Jones v. United States*, 526 U.S. 227, 252-53 (1999)).

2

Watson argues that pursuant to the non-delegation doctrine[2] and separation of powers,[3] this Constitutional defect can only be remedied by Congress, which can enact a new criminal statute setting forth statutory aggravating factors as essential elements of capital murder. Watson argues that the FDPA unconstitutionally allows the Executive branch of government to "charge" these elements in a "death notice."[4]

### B. Grand Jury's "Special Findings"

Pursuant to the FDPA, before a defendant's trial or acceptance of a guilty plea by a court, the Government must file with the court and serve on the defendant a notice setting forth the aggravating factor(s) it intends to prove as justifying a sentence of death, if the defendant is convicted. 18 U.S.C. §3593(a). Although not required by the FDPA, after *Ring*, the DOJ routinely submits the preliminary threshold "intent" factors

---

[2]The United States Supreme Court stated, "'the integrity and maintenance of the system of government ordained by the Constitution' mandate that Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 371-72 (1989) (quoting *Field v. Clark*, 143 U.S. 649, 692 (1892)).

[3]Article I, §1 of the United States Constitution provides, "All legislative Powers herein granted shall be vested in a Congress of the United States . . . ."

[4]18 U.S.C. §3593(a) states:

If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant a notice--(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

3

and the statutory aggravating factors to the grand jury as "Special Findings."

*Ring* was a state death penalty case that did not require statutory aggravating factors to be presented to a grand jury under the Fifth Amendment.[5] In federal death penalty cases, courts interpret *Ring* in conjunction with *Jones v United States*, 526 U.S. 227 (1999). The Court in *Jones* held that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones*, 526 U.S. at 243 n.6.

The preliminary threshold "intent" factors and at least one statutory aggravating factor must be charged in the indictment. *See e.g., United States v. Quinones*, 313 F.3d 49, 53 n.1 (2nd Cir. 2002) (noting that *Ring* requires that statutory aggravating factors must be "alleged in the indictment and found by a jury in capital cases"); *United States v. Allen*, 406 F.3d 940, 943 (8th Cir. 2005) (holding that "the Fifth Amendment requires at least one statutory aggravating factor and the [preliminary threshold "intent" factors] to be found by the grand jury and charged in the indictment"); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004) ("*Ring*'s Sixth Amendment holding applies with equal force in the context of a Fifth Amendment Indictment Clause challenge . . . [and] [a]s a result, the government is required to charge, by indictment, the statutory aggravating factors it intends to prove to render a defendant eligible for the death

---

[5]The Indictment Clause of the Fifth Amendment states, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."

4

penalty . . . . ").

Watson states that the grand jury only has two functions: (1) to determine whether there is probable cause to believe a crime was committed; and (2) to protect citizens against unfounded criminal prosecutions. *See Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972). Watson argues that the grand jury does not serve either of these functions by returning "Special Findings."

Although Watson is correct that nothing in the FDPA permits the Government to charge statutory aggravating factors in an indictment, he fails to note there is nothing prohibiting such action. *United States v. Le*, 327 F.Supp.2d 601, 610 (E.D. Va. 2004). Numerous courts hold that the FDPA can be construed to allow the submission of preliminary threshold "intent" factors and statutory aggravating factors to the grand jury. *See e.g.*, *United States v. Sampson*, 2007 WL 1393742, at *3-5 (1st Cir. May 7, 2007); *United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir. 2006); *Allen*, 406 F.3d at 943, 949; *United States v. Barnette*, 390 F.3d 775, 789 (4th Cir. 2004); *Robinson*, 367 F.3d at 289-90.

Further, *Ring* does not require the Government to substantially rewrite the FDPA to comply with Congress's intent, as Watson claims. The "Special Findings" section of the Second Superseding Indictment satisfies Watson's rights under the Indictment Clause of the Fifth Amendment without violating the plain language of the FDPA. *See United States v. Williams*, 2004 WL 2980027, at *11 (S.D.N.Y. Dec. 22, 2004) ("nothing in the FDPA must be 'rewritten' to comply with *Ring* and *Jones*. There is simply no language in the FDPA that even mentions grand jury findings, let alone prohibits them with respect to facts constituting aggravating [factors]"); *Allen*, 406 F.3d at 949 (finding

5

"nothing in the Act precludes the government from . . . submitting [statutory aggravating factors and the preliminary threshold "intent" factors] to the grand jury for inclusion in the indictment, concluding "[t]his is the practice the Department of Justice has adopted after *Ring*, and it preserves the constitutionality of FDPA prosecutions.").

The Government can easily comply with its constitutional obligations by submitting a case with essential elements of the charge to the to the grand jury, and then comply with its statutory obligations by filing a "Notice of Intent to Seek the Death Penalty." *See Le*, 327 F.Supp.2d at 610. The Government complied with these mandates in Watson's case. It submitted the case to a grand jury which returned an indictment containing a "Special Findings" section with the requisite preliminary threshold "intent" factors and statutory aggravating factors. Subsequently, the Government filed a Notice of Intent to Seek the Death Penalty as to Watson.[6]

Watson relies on *United States v. Jackson*, 390 U.S. 570 (1968) for the proposition that it is the Legislature--not the Executive or Judicial branches--that must "fix" the constitutionally flawed FDPA. Watson states the FDPA cannot be "fixed" by allowing the grand jury to return "Special Findings." According to Watson, although this is one way Congress may choose to "fix" the statute, there are numerous other alternatives. Watson's reliance on *Jackson* is misplaced.

The Court in *Jackson* held that the Federal Kidnaping Act was unconstitutional because a defendant could only avoid the death penalty by pleading guilty or waiving his right to a jury trial. The Court stated this burdened a defendant's constitutional rights

---

[6]The grand jury returned a Second Superseding Indictment on October 26, 2005. The Notice of Intent to Seek the Death Penalty was filed on November 1, 2006.

to proof beyond a reasonable doubt and to a jury trial. *Jackson*, 390 U.S. at 581-82. Rejecting the Government's suggestions on how the statutory provision could be "fixed," the Court stated "the statute sets forth no procedure for imposing the death penalty upon a defendant who waives the right to jury trial or one who pleads guilty." *Id.* at 571, 575-78. It concluded that, "It is one thing to fill a minor gap in a statute--to extrapolate from its general design details that were inadvertently omitted. It is quite another thing to create from whole cloth a complex and completely novel procedure." *Id.* at 580.

Unlike the situation in *Jackson*, "the [FDPA], the Federal Rules of Criminal Procedure, and the common law governing grand jury practice give [the defendant] 'the guidance that defendants ordinarily find in a body of procedural and evidentiary rules spelled out in advance of trial,' that the Supreme Court found lacking in *Jackson*." *United States v. Sampson*, 245 F.Supp.2d 327, 337 (D. Mass. 2003) (quoting *Jackson*, 390 U.S. at 580).

In sum, the FDPA is not an unconstitutional violation of *Ring*; it does not allow for the charging of a "new federal offense of capital murder" not authorized by Congress.

**C. Evidentiary Standard at Penalty Phase**

18 U.S.C. §3593(c), which governs the presentation of evidence at the penalty phase of a death penalty case, provides in relevant part, "at the sentencing hearing, information may be presented as to any matter relevant to sentencing, including any mitigating or aggravating factor.... Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."

7

Relying on *Ring*, Watson contends that this relaxed FDPA evidentiary standard of proof at the penalty stage concerning aggravating factors violates due process, the right to confrontation, and the Eighth Amendment's requirement of reliability in death penalty procedures. Watson argues that Congress failed to adhere to the Federal Rules of Evidence ("FRE") when it enacted the FDPA because it believed it was only required to fashion a sentencing procedure. Watson states Congress could not predict that statutory aggravating factors would rise to the level of the "functional equivalent of an element." He contends that the hearing on aggravating factors is logically a part of the trial on the merits and not a sentencing hearing. He argues that for that reason, there should not be a relaxed standard for the introduction of this evidence at the penalty phase; the FRE should pertain. In support of his argument that the FRE must apply to the penalty phase of a death penalty case where statutory aggravating factors are introduced, Watson asserts that the FRE are applicable to all criminal trials. *See* Fed. R. Evid. 1101.

At oral argument, Defendant contended there is no distinction between statutory aggravating factors and non-statutory aggravating factors, and that presentation of evidence on "aggravating factors generally" should be subject to the FRE.

The Court disagrees that there is no distinction between these classes of aggravating factors. The FDPA sets forth aggravating factors for homicide at 18 U.S.C. §3592(c). Fourteen factors are listed and at least one must be proved to a jury beyond a reasonable doubt before the jury can even entertain the possibility of imposition of a death sentence.

On the other hand, non-statutory factors are addressed at 18 U.S.C. §3593(a),

8

and need not be charged or proved at all, for a jury to still return a death sentence. 18 U.S.C. §3591(a) says that a defendant who has been found guilty of a death eligible offense and who has had a preliminary intent factor(s) found against him, shall be sentenced to death "if after consideration of the factors set forth in §3592 (statutory aggravating factors) in the course of a hearing held pursuant to §3593, it is determined that imposition of a sentence of death is justified." *Id.*

Still, Watson's argument that the statute allows a relaxed standard for consideration of statutory aggravating factors by the jury holds appeal. Does this mean the jury could hear evidence on non-statutory aggravating factors under relaxed rules of evidence, before it even decides whether statutory aggravating factors have been proved beyond a reasonable doubt by exacting evidentiary rules?

The constitutionally significant part of the death penalty trial is the determination of guilt or innocence of the capital offense, and whether the government meets its burden to prove "eligibility" for the death sentence; that is, whether the government persuades the jury beyond a reasonable doubt, that at least one threshold and one statutory aggravating factor are present.

Evidence probative of "eligibility," may be entirely separate from, and not probative of, evidence on non-statutory aggravating factors or mitigating factors. On the other hand, evidence probative of non-statutory aggravating factors may be entirely separate from evidence on, or inadmissible on, issues of guilt or "eligibility."

The Court agrees with Defendant that information on non-statutory aggravating factors might have a tendency to persuade the jury, inappropriately, on threshold and statutory aggravating factors if the proceedings are conducted in such a way that

9

evidence not relevant on "eligibility" issues is considered with or confused with evidence/information on non-statutory aggravating factors.

An order of trial that limits potentially irrelevant (and more prejudicial than probative) evidence in the merits and "eligibility" stages of the trial may address and alleviate Watson's concern that §3593(c)'s "abandonment of the rules of evidence at the capital sentencing hearing violates due process."

While eliminating more prejudicial than probative evidence at the "merits" and "eligibility" stages is essential, at the sentencing stage, "heightened reliability" is essential as well. The Supreme Court has repeatedly emphasized, "the Constitution places special constraints on the procedures used to convict an accused of a capital offense and sentence him to death. The finality of the death penalty requires a 'greater degree of reliability' when it is imposed." *Murray v. Giarrantano*, 492 U.S. 1, 8-9 (1989).

The Supreme Court also made clear that in order to achieve such "heightened reliability," more evidence--not less--should be admitted on the presence or absence of aggravating and mitigating factors. *See Gregg v. Georgia*, 428 U.S. 153, 203-04 ("So long as the evidence introduced . . . at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision.").

Facts relevant to sentencing are far more diffuse than matters relevant to guilt for a particular crime. In determining the appropriate punishment, it is appropriate for the sentencing authority to consider a defendant's whole life and personal make-up. *See id.* ("Highly relevant-if not essential-to [the] selection of an appropriate sentence is the

10

possession of the fullest information possible concerning the defendant's life and characteristics."). The Supreme Court stated that in "determin[ing] whether a defendant eligible for the death penalty should in fact receive that sentence[, w]hat is important . . . is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Tuilaepa v. California*, 512 U.S. 967, 972 (1994) (emphasis in original).

The FDPA permits the admission of evidence that might be excludable under the Federal Rules of Evidence but is nevertheless both constitutionally permissible and relevant to the determination of whether the death penalty should be imposed in a given case. This standard permits "the jury [to] have before it all possible relevant information about the individual defendant whose fate it must determine." *Jurek v. Texas*, 428 U.S. 262, 276 (1976). As a result, the FDPA does not undermine "heightened reliability;" it promotes it.

The Federal Rules of Evidence are not the only means to safeguard a defendant's constitutional rights to due process and to confront and cross-examine witnesses against him at the sentencing hearing. In fact, they are inapplicable at sentencing proceedings before a judge. *See* Fed.R.Evid. 1101(d)(3).

The Court finds that the FDPA can be read in a manner consistent with the Constitution, even after *Ring*. *See United States v. Lee*, 374 F.3d 637, 648 (8th Cir. 2004) (holding that even in light of *Ring*, the FDPA standard does not impair the reliability of the evidence admissible during the penalty phase); *see also United States v. Matthews*, 246 F.Supp.2d 137, 141-46 (N.D.N.Y. 2002); *United States v. Lentz*, 225 F.Supp.2d 672, 682-83 (E.D. Va. 2002); *United States v. Regan*, 221 F.Supp.2d 672,

681-83 (E.D. Va. 2002).

The Court denies this portion of Watson's motion, but does so without prejudice. The Court invites Defendants to raise this issue again if the parties are not able to agree on an order for trial that prevents evidence that is not relevant on "eligibility" issues, from being considered with or confused with evidence on non-statutory aggravating factors.

## III. CONCLUSION

The Court **DENIES** Watson's motion, but **DENIES WITHOUT PREJUDICE** that portion of his motion which challenges the evidentiary standard to be used at the penalty phase.

**IT IS ORDERED.**

s/Victoria A. Roberts
**Victoria A. Roberts**
**United States District Judge**

**Dated: August 23, 2007**

**The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 23, 2007.**

**s/Carol Pinegar**
**Deputy Clerk**