UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff(s),        CASE NUMBER: 05-80025
                                     HONORABLE VICTORIA A. ROBERTS

v.

D-3 KEVIN WATSON,

        Defendant(s).
_____/

**ORDER**

**I.   INTRODUCTION**

This matter is before the Court on Defendant Watson's motions in limine to preclude the admission into evidence of recordings of Timothy O'Reilly (Doc. 684) and testimony of LaTanya Smith (Doc. 685).

The Court: (1) **DENIES** the motion to preclude the recording in part; (2) **RESERVES RULING** on the recording in part; and (3) **RESERVES RULING** on the motion to preclude the testimony of Smith.

**II.   BACKGROUND**

On October 26, 2005, co-defendants Timothy O'Reilly, Norman Duncan, Kevin Watson, Archie Broom, Earl Johnson, and Khayyam Wilson were jointly indicted for their alleged roles in the 2001 armed robbery of the Dearborn Federal Credit Union (DFCU), and the murder of armored guard Norman Anthony Stephens.

In 2004, O'Reilly served time in the Ryan Correctional Facility on unrelated charges.  During his incarceration, O'Reilly provided his cellmate, Barron Nix-Bey (Nix-

Page 1 of  12

Bey) with a detailed account of his involvement in a December 2001 murder and robbery of the DFCU. Nix-Bey contacted the FBI and offered to provide information.

O'Reilly was transferred to the Macomb Correctional Facility at the request of Federal officials. The Michigan Department of Corrections also transferred Nix-Bey. With the assistance of state officials, the FBI arranged for Nix-Bey to tape record O'Reilly at the Macomb Correctional Facility.

Nix-Bey wore a wire during a December 13, 2004 conversation with O'Reilly in which O'Reilly spoke about the December 2001 robbery and murder at the DFCU in great detail. Among other things, O'Reilly told Nix-Bey that he was one of six participants in the robbery. O'Reilly implicated his co-defendants and referred to them by name. O'Reilly said that both he and Watson fired at the murdered guard.

A jury convicted the first of the co-defendants to go to trial, Johnson. During his 2007 trial, this Court admitted the recorded statements of O'Reilly into evidence over Johnson's objection. Johnson appealed the ruling, and the Sixth Circuit affirmed. *See United States v. Johnson,* 581 F.3d 320 (6th Cir. 2009).

### III. ANALYSIS

#### A. Timothy O'Reilly Recordings

##### (1). Sixth Amendment Confrontation Clause

The Sixth Amendment guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that this clause prohibits the "admission of testimonial statements of a witness who did not appear at

trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." However, the Supreme Court declined to specifically define which statements are testimonial for Sixth Amendment purposes.

In the wake of this deficiency, the Sixth Circuit held that the proper inquiry in deciding whether a statement is testimonial, is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Cromer*, 389 F.3d at 675.

Defendant says a recent Supreme Court decision, *Michigan v. Bryant,* 131 S. Ct. 1143 (2011), shows the Sixth Circuit's approach is erroneous. In essence, he says *Bryant* implicitly overrules both this Court and the Sixth Circuit's ruling that O'Reilly's recording is non-testimonial.

Currently, the Sixth Circuit examines statements only from the declarant's point of view. It asks "whether a reasonable person in the declarant's position would anticipate his statements being used against the accused in investigating and prosecuting the crime." *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004). This is the standard that both this Court and the Sixth Circuit applied in Johnson's challenge to the admissibility of O'Reilly's recordings. *See United States v. Johnson,* 2007 WL 2420786 (E.D. Mich. Aug. 23, 2007), *aff'd,* 581 F.3d 320 (6th Cir. 2009). Defendant says *Bryant* made clear that courts must examine the statements and actions of all participants when considering whether statements are testimonial under the Confrontation Clause. Under Defendant's proposed analysis, the motivations of the person secretly recording the statements-- in this case Nix-Bey-- must also be examined. Defendant asks the Court to reconsider its prior ruling that the statements

are non-testimonial. The Court declines to do so.

*Bryant* is not a basis for this Court to conclude that Sixth Circuit precedent on this issue is overruled. First, as the Government points out, *Bryant* concerned statements made by a gunshot victim in response to interrogation by known law enforcement. *Bryant* did not clarify when statements made to persons other than law enforcement are testimonial. *Bryant,* 131 S. Ct. at 1155 n.3 (explicitly reserving the question of "whether and when statements made to someone other than law enforcement are testimonial"). Second, *Bryant* involved an "ongoing emergency," and it is not clear if *Bryant's* analysis applies to non-emergency cases. Finally, in an opinion published after *Bryant,* the Sixth Circuit continues to use its pre-*Bryant,* declarant focused analysis to determine whether statements are testimonial. *See United States v. Boyd,* 2011 WL 1304466 at *5 (6th Cir. 2011) (finding the defendant's statements to a companion non-testimonial, because a reasonable person in the defendant's position would not have anticipated the use of the statements in a criminal proceeding); *see also United States v. Green,* 2011 WL 1099794 (E.D. Tenn. March 22, 2011) (applying Sixth Circuit's pre-*Bryant* analysis).

For these reasons, the Court declines to accept Defendant's invitation to reconsider its earlier ruling.

### (2). Rule 804(b)(3)

Alternatively, Defendant argues that two specific statements within the recording are inadmissible under the Rules of Evidence; he asks the Court to redact them.

The first statements are:

Nix-Bey: I kinda see. (unintelligible) shook Kevin up, after Kevin did that and my
    man died.

O'Reilly: Nah he

Nix-Bey: You don't think so?

O'Reilly: Kevin's killed many people, it don't [sic] bother him.

Nix-Bey: What?

O'Reilly: He's killed many people, it don't [sic] bother him.

Nix-Bey: How you know it don't [sic] bother him, man.

O'Reilly: We all grew up together.

Nix-Bey: So what you [sic] saying

O'Reilly: We did a lot of shit.

Defendant says these statements are not self-inculpatory under Rule 804(b)(3), and should not be admitted under this exception. Defendant says these statements are also inadmissible under Rule 404(b) because they are improper character evidence, and are more unfairly prejudicial than probative under Rule 403.

The Government says it does not plan to play this portion of the recording during its case in chief, but says that Watson may "open the door." Watson asks the Court to rule the statements inadmissible for any purpose.

These statements are inadmissible during the Government's case in chief. However, the Court reserves ruling on whether they are inadmissible for any purpose; circumstances may arise which might warrant their admission.

The second statements are:

Nix-Bey: Okay I understand, him or you, but, you, you said that you, at first, you shot him two times, right, and he fell to the ground. He, he was goin' to the ground and like he was reachin', he went to the ground.

O'Reilly: Yeah.

>Nix-Bey: And you shot him two time [sic].
>
>O'Reilly: Again, he, he tried to reach again, he wasn't trying to grab his wound or anything, he tried to reach again for the other gun.
>
>Nix-Bey: Okay but you shot him two times, okay, and he fell to the ground. What made Kevin shoot him?
>
>O'Reilly: No Kevin, Kevin shot him first when he went to the ground.
>
>Nix-Bey: Oh Kevin shot him when he first went to the ground and you turn around.
>
>O'Reilly: And then he tried to reach again so I just followed up, I (unintelligible)
>
>Nix-Bey: (Laughs) So Kevin shot him the first time then, you shot and he followed up and shot him two times.

Watson says these statements should be redacted because O'Reilly tries to shift blame to Watson as the person who first shot at the guard. Watson says that makes the statements not sufficiently self-inculpatory to be admitted under Rule 804(b)(3). On the other hand, the Government says these statements are clearly self-inculpatory. Furthermore, the Government says this Court and the Sixth Circuit have already ruled the entire recording admissible under Rule 804(b)(3), and the law of the case doctrine precludes a different conclusion now.

Under the law of the case doctrine, "findings made at one point in the litigation become the law of the case for subsequent litigation." *United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir. 1994). The Court is not convinced the doctrine applies here. First, Watson and Johnson were severed by the time of the decision, and Watson did not join in Johnson's motion. And, while Johnson argued the entire tape was inadmissible

under Rule 804(b)(3), he did not parse the statements or advance arguments concerning specific statements within the recordings. Therefore, this Court did not consider whether certain statements might be appropriately redacted. Likewise, the Sixth Circuit had no occasion to consider this argument. The Court does not read the Sixth Circuit's opinion as foreclosing an argument that specific statements within the tape may not be properly redacted in another defendant's trial.

Rule 804(b)(3) allows the admission of certain hearsay statements if the declarant is unavailable:

> (b)   Hearsay exceptions. The following are not excludable by the hearsay rule if the declarant is unavailable as a witness: ...
>
> (3)   Statement against interest. "A statement that:
>
> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate the trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."

Under this rule, a statement is admissible if "(1) the declarant is unavailable to testify; (2) the statement inculpates the declarant; and (3) corroborating circumstances truly establish the trustworthiness of the statement." *United States v. Franklin*, 415 F.3d 537, 547 (6th Cir. 2005) (citing *United States v. Tocco*, 200 F.3d 401, 415 (6th Cir. 2000)).

Defendant relies on *Williamson v. United States,* 512 U.S. 594 (1994). In *Williamson*, the Supreme Court held Rule 804(b)(3) does not allow admission of nonself-inculpatory hearsay statements, even if they are made within a broader

narrative that is generally self-inculpatory. According to the Court, parts of confessions that implicate coconspirators do little to subject the confessor to criminal liability. The Court cautiously distinguished between statements that were actually self inculpatory, and those that "merely attempt[] to shift blame or curry favor." *Id.* at 603. It reasoned that "[a] reasonable person . . . might even think that implicating someone else would decrease his practical exposure to criminal liability . . . ." *Id.* at 604.

*Williamson* is not on point. First, although O'Reilly says that Watson shot first, O'Reilly clearly inculpates himself as a shooter. This is not a self-exculpatory statement that inculpates a coconspirator. Watson fails to explain why shooting first or second makes any significant difference as to the defendants' relative exposure to criminal liability in this conspiracy case.

Second, to the extent Watson suggests O'Reilly is trying to shift blame, the Court disagrees. In *Williamson,* the defendant had a reasonable argument that his coconspiritor was attempting to shift blame and curry favor because his statements were made to known law enforcement. O'Reilly did not know he was being recorded by a government informant; he had no reason to attempt to shift blame or curry favor when speaking with Nix-Bey. These statements are admissible under Rule 804(b)(3).

     **B.**    **Testimony of LaTanya Smith**

Defendant moves the Court to preclude LaTanya Smith from testifying that her husband, Norman Duncan, told her Watson shot and killed guard Anthony Stephens. Defendant says this testimony is hearsay and does not fall within any exception. The Government says the testimony is admissible under Rule 804(b)(3) as a statement

against penal interest.[1]

Under Rule 804(b)(3), a statement is admissible if "(1) the declarant is unavailable to testify; (2) the statement inculpates the declarant; and (3) corroborating circumstances truly establish the trustworthiness of the statement." *United States v. Franklin*, 415 F.3d 537, 547 (6th Cir. 2005) (citing *United States v. Tocco*, 200 F.3d 401, 415 (6th Cir. 2000)).

Defendant says the statements are inadmissible under this rule because they are not sufficiently self-inculpatory to Duncan. The Government says Duncan's statements link himself to others in the conspiracy, which inculpates Duncan. The Court does not have enough information about the proposed testimony of Smith to decide this issue.

The parties rely on Smith's testimony during O'Reilly's trial as the basis for this motion.

> Q. Mrs. Smith, at some point did you become aware that there had been an armored car robbery at the Dearborn Federal Credit Union on December 14th of 2001?
>
> A. Yes.
>
> Q. How did you become aware of that?
>
> A. I was over to the house on Birwood a couple of days later.
>
> Q. Before you went to the Birwood address a couple of days later, did you hear about it anywhere else, on the news?
>
> A. Yes.
>
> Q. And were you aware from one of the news reports that a guard had been killed in the robbery?

---

[1] The Government conceded it would not seek to admit Smith's testimony should Watson and Duncan be tried jointly.

A. Yes.

Q. So, you went to the Birwood address a couple of days after that –

A. Yes.

Q. -- incident of the robbery? And what happened at Birwood?

A. I went over there and I was sitting in the living room, and a group of them was talking about it.

Q. Who was there? Who was the group?

A. Norman Duncan, Timothy O'Reilly, Watson.

Q. Was Archie Broom there?

A. Yes.

Q. Okay. They were talking about it. Were you part of the conversation sitting right there?

A. No.

Q. Where were they when they were talking?

A. They was [sic] by the front door and I was like in the dining room.

Q. But you could hear some of what they were saying, at least?

A. Yes.

Q. What did you hear them talking about?

A. About the shooting.

Q. And what did you hear Norm Duncan say?

A. He said that his cousin had shot the person.

Q. And "cousin" at that time to your understanding meant who?

A. Mr. Watson.

Q. Did Mr. Duncan say that only his cousin had shot the guard?

A. Yes.

. . .

Q. Do you understand my question? When you were listening to Mr. Duncan, the conversation that day, did Mr. Duncan say explicitly Kevin Watson is the only person who shot a guard during the robbery?

A. Yes.

Q. Did you hear anything about Timothy O'Reilly being there?

A. Yes.

Q. What did you hear?

A. That he was there.

Q. Did you hear anything more about what Timothy O'Reilly was doing?

A. No.

Q. Did you have any role in the planning of this robbery?

A. No.

(Smith, July 15, 2010, O'Reilly Trial Tr. Vol. 5, at 41-43).

Based on Smith's testimony, it does not appear that Duncan made any statements that inculpated himself in the robbery. Duncan merely said that Watson was the shooter, and O'Reilly was there. Duncan does not say what role, if any, he had in the robbery, or even whether he participated. None of the statements that Smith testified Duncan made during this conversation would subject Duncan to criminal liability. If this fairly represents the entire scope of the statements Smith heard Duncan make, they cannot be admitted under Rule 804(b)(3). But, because it is possible that

this testimony does not represent the entirety of the conversation Smith says she heard, the Court reserves ruling on this issue.

## IV.  CONCLUSION

The Court DENIES Defendant Watson's motion to exclude the O'Reilly recordings in part, and RESERVES JUDGMENT in part.  The Court RESERVES JUDGMENT on the Watson's motion to exclude the testimony of Smith.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  May 18, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 18, 2011.

s/Linda Vertriest
Deputy Clerk